[Cite as *In re B.W.*, 2026-Ohio-2640.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: B.W. | : | APPEAL NO. C-250301 |
| | | TRIAL NO. F/21/1044 Z |
| | : | |
| | : | *JUDGMENT ENTRY* |

This cause was heard upon the appeal, the record, the briefs, and arguments.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is affirmed.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 7/10/2026 per order of the court.**

**By:**_____
    **Administrative Judge**

[Cite as *In re B.W.*, 2026-Ohio-2640.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |  |
|---|---|---|---|
| IN RE: B.W. | : | APPEAL NO. | C-250301 |
|  |  | TRIAL NO. | F/21/1044 Z |
|  | : |  |  |
|  | : | *O P I N I O N* |  |
|  | : |  |  |

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: July 10, 2026

*Appellant Mother*, pro se,

*Kimberly Varney Thomas, LLC*, and *Kimberly V. Thomas,* for Appellee S.W.,

*Pro Kids, Inc.,* and *Jeffrey A. McCormick*, for Appellee Guardian Ad Litem.

**Bock, Judge.**

{¶1} Appellant Mother appeals the juvenile court's judgment awarding legal custody of her daughter B.W., currently five years old, to nonparent S.W., who has been solely caring for and financially supporting B.W. since January 2022. In this appeal, Mother raises six assignments of error for our review. Because we hold that the juvenile court did not violate Mother's due-process rights or abuse its discretion by considering certain evidence, and that the custody award was supported by competent, credible evidence, we affirm the juvenile court's judgment.

## I. Factual and Procedural History

### A. Mother leaves child with others who eventually seek legal custody

{¶2} The Hamilton County Department of Job and Family Services ("HCJFS") first became involved with Mother at B.W.'s birth in February 2021. Mother tested positive for marijuana and, shortly after Mother left the hospital, an unknown caller reported a lack of newborn supplies in Mother's home. HCJFS later closed that case.

{¶3} In May 2021, Mother began leaving B.W. with the child's paternal Grandmother ("Grandmother") or Mother's cousin, F.F., for periods ranging from one to three weeks, with minimal contact. During the summer of 2021, F.F.—who has three children of her own and full-time employment—became overwhelmed and sought assistance from her long-time friend, S.W., a former guardian ad litem and HCJFS caseworker.

{¶4} Initially, Grandmother, F.F., and S.W. coordinated care for B.W. HCJFS again became involved after learning that Mother had repeatedly left B.W. with various caregivers while maintaining little contact. At that time, Mother was living with her boyfriend, who had expelled Mother from the apartment on at least one

occasion. HCJFS implemented a safety plan under which F.F. would care for B.W. during the week and Mother would have supervised visitation on the weekends. Mother frequently missed these visits. In the fall of 2021, after Mother violated the safety plan, S.W. filed a petition for legal custody of B.W. so she could enroll her in daycare and take her to medical appointments. In January 2022, the juvenile court awarded S.W. interim legal custody.

{¶5} By May 2022, Mother had secured housing and was working with HCJFS but had not yet completed her diagnostic-of-functioning assessment ("DAF"). The juvenile court awarded Mother four hours of supervised visitation each week, later increased to 16 hours, supervised by Grandmother.

{¶6} In September 2022, Grandmother filed her own petition for legal custody. Because a second petition was filed and because HCJFS was also involved, the juvenile court appointed a guardian ad litem ("GAL") for B.W. By April 2023, the GAL reported that Mother maintained an apartment, had a bed and some clothing for B.W., and was attending parenting-education classes.

### B. Custody Hearings

{¶7} The magistrate conducted three hearings in which the HCJFS caseworker, Mother, Grandmother, F.F., S.W., and the GAL testified.

#### 1. Caseworker, GAL, caretakers, and S.W. testified in favor of S.W.'s petition

{¶8} The HCJFS caseworker testified that although Mother had maintained her own housing for more than a year, at the time of the hearing, she was facing eviction. She explained that Mother had left her job at a gas station for part-time employment at a law firm. Although it took approximately one year for Mother to complete the DAF, she ultimately complied. HCJFS recommended drug screening, parenting class, and individual counseling, but it deferred moving forward on its

dependency action until the private-custody litigation was resolved. While HCJFS approved S.W.'s home study, assessors were unable to gain access to Mother's and Grandmother's residences.

{¶9} B.W.'s GAL testified that Mother suffered from unspecified depressive disorder and PTSD, but she tended to minimize her mental-health issues. She was concerned about stable housing as Mother had lived in four residences during B.W.'s relatively short lifetime and was currently facing eviction. Because B.W.'s GAL had been unable to inspect Mother's residence, she could not recommend its suitability. She also expressed concern about Mother's frequent job changes, minimal financial support for B.W., and Mother's own concerns about maintaining employment due to a recent cancer diagnosis.

{¶10} The GAL had observed B.W. with each caregiver. She believed B.W. was bonded to, and affectionate with, both S.W. and Grandmother. But the GAL said B.W. was not similarly bonded with Mother. She had only observed Mother with B.W. when Grandmother was present and she believed that Grandmother typically directed Mother's caregiving. The GAL did not recommend awarding custody to Mother due to her housing and employment instability and doubts about Mother's long-term ability to care for B.W.

{¶11} F.F. testified that her relationship with Mother had been "distant" until Mother sought her assistance to care for B.W. After F.F. assumed care, she attempted to facilitate weekend visitation between Mother and B.W., but Mother frequently failed to appear. F.F. explained that she had provided financial support for B.W. until the court awarded S.W. interim custody, and that Mother contributed diapers on one occasion. She recalled an instance in which Mother appeared at her workplace smelling of marijuana. F.F. testified that B.W. had lived with S.W. for more than a

year, that they had a very loving relationship, and that she believed remaining in S.W.'s care was in B.W.'s best interest. She also noted that S.W. permitted Mother and Grandmother to host a birthday party for the child.

### 2. S.W. testified in support of her petition

{¶12} S.W. testified that she had resided in her home since 2016 and lived with B.W. and two dogs. Her adult child no longer lived in the residence. S.W. explained that she held a bachelor's degree in psychology, was financially able to provide for B.W., and had enrolled B.W. in dance lessons and kindergarten. She testified that B.W. enjoyed her preschool and daycare, had made friends, and was bonded to her teachers.

{¶13} S.W. further testified that Mother was "consistently inconsistent" with visits, particularly when Grandmother was unable to supervise and S.W. was required to do so. She stated that B.W. had trouble separating from her and had refused to visit when Mother's new boyfriend was present. Although S.W. believed Mother had been disrespectful toward her, she supported continued relationships between B.W. and Mother and Grandmother. S.W. expressed a desire to continue caring for B.W.

### 3. Mother and Grandmother testified in support of custody to a relative

{¶14} Grandmother testified that she believed it important for family members to remain together and that if the court denied Mother custody, she sought custody herself. Grandmother acknowledged that B.W. was bonded to S.W., noting that she provided high-quality care and cooperated with visitation. While Grandmother believed that Mother was making progress and should ultimately regain custody, she supported continued supervised visitation.

{¶15} Mother testified regarding her housing history, confirming that she had resided in four different homes since B.W.'s birth and was in the process of being evicted from her current apartment. She stated she had secured a new apartment but

had been unable to obtain the keys before the final hearing.

{¶16} Mother explained that she initially sought assistance from her cousin after B.W.'s birth because she had been contemplating adoption. She ultimately wished to parent B.W., but HCJFS's safety plan prevented her from bringing B.W. to her home. Mother testified that she held a medical-marijuana card to treat migraines and recently had been diagnosed with cancer.

{¶17} Mother worked two to three days per week at a law firm, but she intended to transition to a job assisting individuals with developmental disabilities. She was awaiting results of her GED examination. She testified that her new schedule would allow her to work five days per week and independently afford preschool and daycare for B.W.

{¶18} Mother testified that although she did not believe therapy was necessary for her, she was willing to participate in therapy if it would facilitate regaining custody.

{¶19} At the end of the final hearing, the magistrate, applying a clear-and-convincing evidentiary standard, found Mother was not unsuitable and denied S.W.'s and Grandmother's custody petitions. S.W. and the GAL filed objections. After reviewing the record and the objections, the juvenile court determined that the magistrate had misapplied the law. The court found, by a preponderance of the evidence, that Mother was unsuitable to parent B.W. because placing B.W. with Mother would be detrimental to B.W. The juvenile court set aside the magistrate's decision and granted S.W. legal custody of B.W. It awarded Mother weekly visitation with B.W. Mother now appeals, raising six assignments of error.

## II. Analysis

### A. The Court did not violate Mother's due-process right to parent B.W.

{¶20} We address Mother's first and fifth assignments of error together, as

she contends that the juvenile court erred by awarding custody of B.W. to S.W., a nonrelative, without first determining that Mother was unsuitable to parent her daughter. Mother argues that the absence of such a finding violated her due-process right to the care and custody of her child. Because the juvenile court expressly found Mother unsuitable and because this finding was supported by a preponderance of the evidence, we overrule these assignments of error.

{¶21} In *In re J.L.*, 2026-Ohio-1216 (1st Dist.), this court reiterated that the controlling principle in custody disputes between a parent and nonparent is the natural parent's fundamental liberty interest in the care, custody, and management of their child. *Id.* at ¶ 15. This right is protected under both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution. *Id.*, citing *Hockstok v. Hockstok*, 2002-Ohio-7208, ¶ 16.

{¶22} Ohio courts safeguard parental rights by strictly limiting the circumstances under which a court may deny natural parents custody of their children. *Id.* at ¶ 17, citing *Hockstok* at ¶ 17. Accordingly, the Ohio Supreme Court has held that in a custody dispute between a parent and nonparent, a court may not award custody to the nonparent absent a determination, supported by a preponderance of the evidence, "that the parent has abandoned the child; contractually relinquished custody of the child; that the parent has become totally incapable of supporting or caring for the child; or that an award of custody to the parent would be detrimental to the child." *Id.*, citing *In re Perales*, 52 Ohio St.2d 89 (1977), syllabus. When one of these circumstances is established, the court may find the parent unsuitable. *Id.*

{¶23} Here, the juvenile court specifically found that "an award of custody to the [Mother] would be detrimental to the child" and "Mother was unsuitable." Thus, if the juvenile court's findings were supported by the preponderance of the evidence,

the court did not violate Mother's due-process rights.

{¶24} The record supports the juvenile court's determination that placing B.W. with Mother would be detrimental given the lack of a strong and affectionate bond between Mother and B.W., Mother's failure to financially support B.W. other than providing diapers once, and Mother's housing and employment instability. These factors demonstrate that granting Mother custody of B.W. would have a detrimental impact on the child. *See generally In re E.B.*, 2014-Ohio-5764 (11th Dist.) (grant of custody to parent would be detrimental to child where parent, among other things, failed to provide financial support for child and maintain stable housing).

{¶25} Because the juvenile court made the required parental unsuitability finding and that finding is supported by the record, we overrule Mother's first and fifth assignments of error.

### B. The juvenile court did not have to consider Mother's compliance with HCJFS's safety-plan requirements

{¶26} In her second assignment of error, Mother contends that the juvenile court abused its discretion by failing to consider her compliance with HCJFS's safety-plan requirements, asserting that such consideration was statutorily mandated by R.C. 3109.04(F)(1). Specifically, Mother contends that the juvenile court ignored the fact that she maintained stable housing and employment and had visited with B.W.

{¶27} The juvenile court was not required to evaluate Mother's compliance with HCJFS's requirements because this was not a dependency action. Although HCJFS became involved with Mother after she began leaving B.W. in the care of others for extended periods, the agency had not yet initiated a formal case, as the situation had already progressed into a private custody dispute between a parent and a nonparent. Moreover, during the custody proceedings, the magistrate expressly

advised Mother that she was not required to demonstrate compliance with HCJFS requirements, including any safety-plan conditions. While R.C. 3109.04(F)(1) sets forth best-interest factors that may be relevant in a custody determination once a parent has been found unsuitable, the statute contains no factor requiring the court to assess adherence to a safety plan implemented outside the dependency framework.

{¶28} Moreover, the record reflects that the juvenile court did consider Mother's housing, employment, and visitation history in reaching its custody determination. To the extent Mother is arguing that the juvenile court's custody determination is an abuse of discretion, we address that issue in Mother's sixth assignment of error.

{¶29} We overrule Mother's second assignment of error.

### C. *The trial court did not commit an obvious evidentiary error*

{¶30} In her third assignment of error, Mother contends that the juvenile court erred by admitting and relying on hearsay testimony from the GAL and S.W. in violation of Evid.R. 802 and applicable caselaw. Mother does not identify any specific portion of the record reflecting the alleged evidentiary error or specify which statements among the three hearings constitute hearsay and she did not object below on a hearsay basis.

{¶31} Because Mother lodged no hearsay objections below, assuming we could determine which statements she challenges as hearsay, this court could review only for plain error. *See* Juv.R. 40(D)(3)(b)(iv). Plain error is an obvious error affecting a substantial right. *See State v. Wilson*, 2026-Ohio-1178, ¶ 12 (1st Dist.). But on appeal, Mother does not present a plain-error argument, and appellate courts are not required to develop such an argument on an appellant's behalf. *In re G.W.*, 2024-Ohio-1551, ¶ 24 (1st Dist.).

**{¶32}** Further, "the plain-error doctrine is disfavored in the civil context," and may be applied "only in the extremely rare case involving exceptional circumstances" where the error "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Nationstar Mtge., LLC v. Krehnbrink*, 2025-Ohio-4445, ¶ 39 (1st Dist.), citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122-123 (1997). Nothing in the record plainly indicates that the proceedings' basic fairness and/or integrity were compromised by hearsay admitted at trial. Additionally, a judge acting as factfinder is presumed capable of disregarding improper testimony. *See In re K.R.*, 2011-Ohio-1454, ¶ 75 (11th Dist.), citing *In re Sims*, 13 Ohio App.3d 37, 41 (12th Dist. 1983).

**{¶33}** We overrule Mother's third assignment of error.

### D.  *The juvenile court properly relied on the GAL's report and testimony*

**{¶34}** In her fourth assignment of error, Mother asserts that the juvenile court erred by relying on the GAL's report and testimony because, she contends, the GAL failed to comply with Sup.R. 48.03 and 48.06.

**{¶35}** Sup.R. 48.03 specifies a GAL's responsibilities, including maintaining objectivity, attending hearings, becoming adequately informed about the case, observing the child with each parent or caregiver, visiting proposed residences, interviewing relevant individuals, reviewing necessary records, and providing timely recommendations regarding the child's best interests. Sup.R. 48.06 requires GALs to file timely written reports detailing the performance of these duties and offering recommendations to the court.

**{¶36}** First, we have held that these Rules of Superintendence are "internal administrative guidelines that are not intended to function as rules of practice and procedure." *State v. Ventura*, 2016-Ohio-5151, ¶ 24 (1st Dist.). Thus, a violation of the

guidelines is not grounds for reversal. *In re B.K.*, 2011-Ohio-4470, ¶ 23 (12th Dist.).

**{¶37}** Second, although Mother argues that the GAL omitted critical facts relating to Mother's housing, employment, and visitation, she does not identify which specific facts were purportedly omitted, thereby limiting our ability to meaningfully review her claim. *See* App.R. 16.

**{¶38}** It appears Mother may be referencing the GAL's failure to inspect Mother's proposed new residence before the final hearing. The GAL testified that Mother was facing eviction and repeatedly stated she would be moving, but Mother had postponed each scheduled attempt to inspect the new residence. On the day of the final hearing, Mother indicated she would obtain the keys the following day. As such, the GAL had no opportunity to assess the home's suitability.

**{¶39}** Considering Mother's argument broadly, we find nothing in the record demonstrating that the GAL failed to comply with Sup.R. 48.03 or 48.06. Mother did not raise any issue involving the GAL's conduct at the hearings or object to the admission of the GAL's report. Moreover, the record shows the GAL fulfilled her duties: she observed B.W. with Grandmother, Mother, and S.W. She submitted timely written reports. The GAL addressed Mother's visitation and employment history. And she detailed the strong bonds between B.W. and both Grandmother and S.W.

**{¶40}** Finally, we note that a juvenile court, as the trier of fact, is permitted to assign weight to a GAL's testimony and recommendation and consider it in the context of other evidence. *In re K.A.*, 2021-Ohio-1773, ¶ 47 (5th Dist.).

**{¶41}** We overrule the fourth assignment of error.

### E. *Competent, credible evidence supports the juvenile court's judgment*

**{¶42}** In her sixth assignment of error, Mother argues that the juvenile court abused its discretion by awarding legal custody to S.W., a nonparent, because the

judgment is not supported by competent, credible evidence.

**{¶43}** We review a trial court's legal-custody determination for an abuse of discretion. *J.L.*, 2026-Ohio-1216, at ¶ 29 (1st Dist.). An abuse of discretion occurs when "a court exercise[s] its judgment in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35. A trial court abuses its discretion where its decision "is unreasonable, arbitrary, or unconscionable." *Id.*, citing *In re C.R.*, 2022-Ohio-3540, ¶ 19 (1st Dist.), citing *In re H.J.H.*, 2019-Ohio-116, ¶ 3 (1st Dist.). A judgment is unreasonable and subject to reversal when it is not supported by competent, credible evidence. *Id.*

**{¶44}** Mother asserts the court overlooked evidence that she had secured stable housing, obtained employment, complied with the safety plan, and exercised visitation. But the record shows the juvenile court considered all relevant evidence.

**{¶45}** First, the juvenile court considered that Mother had lived in four residences during B.W.'s lifetime. At the time of the custody hearing, Mother was being evicted from her apartment. Although she claimed to have obtained new housing, the GAL was unable to confirm whether Mother had done so and whether the house was suitable because Mother repeatedly postponed scheduled inspections.

**{¶46}** Next, the court observed that Mother had worked at her most recent place of employment for approximately one year before taking on a series of short-term jobs. While Mother was employed at the time of the hearing, she recently had been diagnosed with cancer and had expressed concern to the GAL about whether she could maintain employment during treatment. And Mother had not financially supported B.W., other than providing diapers once.

**{¶47}** Third, Mother asserts that the court should have considered her compliance with HCJFS's safety plan. But whether she complied with the plan is not

clear from the record. Moreover, the juvenile court did consider that HCJFS had asked Mother to complete a diagnostic assessment, which took her a year to complete. And while Mother engaged in therapy during the course of the proceedings, the court found that Mother minimized her need for treatment.

**{¶48}** Fourth, the juvenile court found that Mother consistently attended visits only when Grandmother supervised them. The record demonstrates that when S.W. served as the supervisor, Mother often failed to appear.

**{¶49}** Finally, the juvenile court considered B.W.'s relationship and bond with each caregiver: for most of her life, B.W. resided with S.W., with whom she has a strong bond. Moreover, S.W. honors visitation with B.W.'s family members.

**{¶50}** Based on the record before us, we hold that the juvenile court did not abuse its discretion by granting S.W. legal custody of B.W. The court's findings—that Mother was unsuitable to parent B.W. and that granting S.W. custody was in B.W.'s best interest—were supported by competent, credible evidence.

**{¶51}** We overrule Mother's sixth assignment of error.

### III. Conclusion

**{¶52}** In considering this appeal, we recognize that the juvenile court's judgment has a significant impact on Mother and her relationship with her daughter. We are mindful, however, that this case involves an award of legal custody to a nonparent rather than a permanent termination of Mother's parental rights. Consequently, Mother retains residual parental rights and responsibilities, and the juvenile court retains continuing jurisdiction over custody matters if Mother chooses to move for a change of custody in the future. *See In re C.R.*, 2006-Ohio-1191, ¶ 23.

**{¶53}** We affirm the juvenile court's judgment.

Judgment affirmed.

14

CROUSE, P.J., and NESTOR, J., concur.